KTF:BET

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

CARLOS FELIPE PADILLA EZQUERRO,
a/k/a "Irishman,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

REMOVAL TO THE
SOUTHERN DISTRICT
OF FLORIDA

(Fed. R. Crim. P. 5)

Case No.

25 MJ 315

EASTERN DISTRICT OF NEW YORK, SS:

SCOTT HAMPTON, being duly sworn, deposes and states that he is a Special

Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and

acting as such.

On or about September 18, 2025, the United States District Court for the Southern

District of Florida issued a warrant for the arrest of the defendant CARLOS FELIPE PADILLA

EZQUERRO for violating Title 18, United States Code, Section 1956(h) (conspiracy to engage

in money laundering).

The source of your deponent's information and the grounds for his belief are as

follows:[1]

1.      On or about September 18, 2025, a grand jury in the Southern District of

Florida returned an indictment charging the defendant CARLOS FELIPE PADILLA

_____

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to
establish probable cause to arrest, I have not described all the relevant facts and circumstances of
which I am aware.

EZQUERRO with violating Title 18, United States Code, Section 1956(h) (conspiracy to engage in money laundering) (the "Indictment"). A true and correct copy of the Indictment is attached as Exhibit A.

2. In connection with the Indictment, on or about September 18, 2025, the United States District Court for the Southern District of Florida issued a warrant for the arrest of the defendant CARLOS FELIPE PADILLA EZQUERRO (the "Warrant"). A true and correct copy of the Warrant is attached as Exhibit B.

3. On or about October 31, 2025, the defendant CARLOS FELIPE PADILLA EZQUERRO arrived at John F. Kennedy International Airport ("JFK") on a flight from Mexico and was taken into custody by U.S. Customs and Border Protection ("CBP") at approximately 7 p.m. after he attempted to go through customs, due to the active warrant for his arrest. At the time he was detained, the defendant PADILLA had in his possession his passport, which was also taken into custody by CBP.

4. On or about October 31, 2025, law enforcement agents from the FBI arrested the defendant CARLOS FELIPE PADILLA EZQUERRO at JFK. FBI agents obtained the defendant PADILLA's passport from CBP, which listed the same name and date of birth as the CARLOS FELIPE PADILLA EZQUERRO who is wanted in the Southern District of Florida.

5. Law enforcement agents also compared the physical appearance of the defendant CARLOS FELIPE PADILLA EZQUERRO to a photograph of CARLOS FELIPE PADILLA EZQUERRO in a file prepared by law enforcement agents that depicts the person who is wanted in the Southern District of Florida. The agents observed that the defendant PADILLA appeared to be the same person depicted in this photograph.

6.      Based on the foregoing, I submit that there is probable cause to believe that the defendant is the CARLOS FELIPE PADILLA EZQUERRO who is wanted in the Southern District of Florida.

WHEREFORE, your deponent respectfully requests that the defendant CARLOS FELIPE PADILLA EZQUERRO be removed to the Southern District of Florida so that he may be dealt with according to law.

SCOTT HAMPTON
Special Agent
Federal Bureau of Investigation

Sworn to before me this
1 day of November, 2025

THE HONORABLE LARA K. ESHKENAZI
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**25-CR-20416-MARTINEZ/SANCHEZ**
CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 1960(a)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(2)(A)

UNITED STATES OF AMERICA

vs.

RAFAEL ALBERTO VARGAS GONZALEZ,
    a/k/a "Rafa,"
JUAN CARLOS MINERO ALONSO,
CATHERINE GIOVANNA ROJAS ESCOBAR,
ROMAN DAVID ACERO QUINTERO,
LUIS FELIPE AGUDELO,
SAMUEL IGNACIO REYES BELLO,
JAVIER ANDRES QUINTERO DE VEGA,
PAOLA ANDREA VARGAS GONZALEZ,
EDUARDO JOSE VALENCIA MAZUERA,
JUAN JOSE VALENCIA VARGAS,
JUAN SEBASTIAN REYES BELLO,
JESUS GUILLERMO LUJAN VERDUZCO,
ADALBERTO VILLAESCUSA CARRILLO,
LUIS FERNANDO GAXIOLA LOUSTAUNA,
LILIANA GUADALUPE CASTRO HACES,
JORGE LUIS MEDINA MEDINA,
CARLOS FELIPE PADILLA EZQUERRO,
    a/k/a "Irishman,"
MICHELLE ALEJANDRA BUSTAMANTE BELTRAN,
    a/k/a "Leo," and
OMAR ALEJANDRO FAVELA VALENZUELA,
    a/k/a "AX,"

                    **Defendants.**
_____/

FILED BY_____ BM _____D.C.

*Sep 18, 2025*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Indictment:

### Relevant Financial Institutions

1.      Amerant Bank ("Amerant") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

2.      Bank of America ("BoA") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

3.      Capital One Bank ("Capital One") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

4.      Citibank, N.A. ("Citibank") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

5.      Citizens Bank ("Citizens") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

6.      Coastal Community Bank ("Coastal Community/Bluevine") was a financial institution with offices throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC. Bluevine was an online financial company and whose banking accounts were insured by the FDIC through Coastal Community.

2

7.    Cross River Bank ("Cross River") was a financial institution with offices located in New Jersey and New York and whose accounts were insured by the FDIC.

8.    Evolve Bank & Trust ("Evolve") was a financial institution with offices located in Arkansas and Tennessee and whose accounts were insured by the FDIC.

9.    JP Morgan Chase Bank ("JPMC") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

10.    Regions Bank ("Regions") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

11.    Santander Bank ("Santander") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

12.    TD Bank ("TD Bank") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

13.    Truist Bank ("Truist") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

14.    Wells Fargo Bank ("Wells Fargo") was a financial institution with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

15. Bancolombia S.A. ("Bancolombia") was a private, foreign banking institution located in Colombia. Bancolombia was also a wholly owned subsidiary of Grupo de Inversiones Suramericana ("Grupo Sura"), a Colombian multi-national banking and financial services company.

16. The term "financial institutions," as defined within 18 U.S.C. §§ 20 and 1956(c)(6)(A)-(B) and 31 U.S.C. § 5312(a)(2), refers collectively to the entities set forth in the preceding paragraphs 1-15.

### Relevant Terms

17. A "security" included a wide range of investment vehicles, including "investment contracts." Investment contracts were instruments, schemes, or transactions through which a person invested money in a common enterprise and reasonably expected profits or returns derived from the entrepreneurial or managerial efforts of others.

18. "Cryptocurrency" was a digital currency in which transactions were verified and records were maintained by a decentralized system using cryptography, rather than a centralized authority such as a bank, financial institution, or government. There were multiple types of cryptocurrencies, such as Bitcoin and Ethereum.

19. The "blockchain" was a distributed public ledger that recorded incoming and outgoing cryptocurrency transactions. The blockchain recorded, among other things, the date and time of each cryptocurrency transaction, the unique cryptocurrency addresses associated with the transaction and the sending and receiving parties, and the amount of cryptocurrency transferred. The blockchain, however, did not identify the parties that controlled the cryptocurrency addresses involved in the transaction.

20. Cryptocurrency owners typically stored their cryptocurrency in digital "wallets," which were identified by unique electronic "addresses." By maintaining multiple cryptocurrency addresses and using foreign-based cryptocurrency exchanges, individuals engaged in cryptocurrency-based fraud and money laundering could attempt to thwart law enforcement's efforts to track the flow of unlawful proceeds and conceal their illegal activities by quickly transferring such proceeds in various amounts through multiple cryptocurrency addresses and across multiple blockchains.

21. "Ponzi schemes" were financial frauds that induced investments by promising high, low-risk returns from allegedly legitimate business and investment enterprises. In a Ponzi scheme, new investor proceeds are falsely and fraudulently converted to an operator's own personal use and benefit and funneled, at times along with other unlawful proceeds, to previous investors under the guise of legitimate profits and returns, otherwise known as "lulling payments." Ponzi schemes cultivate an illusion that legitimate profit-making business opportunities exist, thereby inducing further investment.

22. "Ponzi investors" were the real-person and institutional investors that were solicited by, and extended funds to, **RAFAEL ALBERTO VARGAS-GONZALEZ, a/k/a "Rafa," CATHERINE GIOVANNA ROJAS ESCOBAR,** and others believing the investment proposals offered through Empirex, NKC Management, and Cryptox Hub to be legitimate.

23. "Money brokers" were individuals that engaged in financial transactions, in exchange for monetary compensation, with the proceeds of special unlawful activity, including on behalf of drug trafficking organizations ("DTOs") and fraud scheme operators, utilizing financial institutions and cryptocurrency exchanges.

5

24.    "Money couriers" were individuals that accepted and deposited proceeds of special unlawful activity into accounts at financial institutions throughout the United States at the direction of money brokers and others.

### Regulation of Money Transmitting Businesses

25.    The laws of the State of Florida required that a person or business have a license to conduct a money transmitting business. Florida law punished the unlicensed operation of a money transmitting business as a felony offense.

26.    Title 18, United States Code, Section 1960(b)(1)(A) required money transmitting businesses which affected interstate or foreign commerce in any manner or degree to possess an appropriate money transmitting license from the State in which they operate.

27.    Title 31, United States Code, Section 533C(a), and regulations promulgated pursuant to that statute, required individuals who owned or controlled a money transmitting business to register the business with the U.S. Secretary of the Treasury no later than 180 days after the date on which the business was established.

28.    Pursuant to Title 18, United States Code, Section 1960(b)(2), the term "money transmitting" included "transferring funds on behalf of the public by any means."

### Relevant Entities

29.    Payward Ventures, Inc. ("Payward Ventures") was a company in the State of Delaware, with its listed address located in San Francisco, California. Payward Ventures was a wholly owned subsidiary of Payward, Inc. ("Payward") a State of Delaware company, with its listed address located in San Francisco, California. Both Payward and Payward Ventures, Inc. did business as Kraken, which operated as an online trading platform through which its customers could buy and sell cryptocurrency assets.

6

30. Binance was a company in the Cayman Islands and Seychelles and operated as an online trading platform through which its customers could buy and sell cryptocurrency assets.

31. Empirex Capital LLC ("Empirex") was a company in the State of Florida, incorporated on or about July 4, 2018, with listed addresses located in Miami, Florida, Coral Gables, Florida, Medellin, Colombia, and Cali, Colombia. Empirex owned and operated a cryptocurrency wallet with Kraken. Empirex purported to operate as an investment platform and touted its various investment programs, including cryptocurrency.

32. NKC Management LLC ("NKC Management") was a company in the State of Florida, incorporated on or about April 5, 2021, with its listed address located in Miami, Florida. NKC Management operated as a companion investment platform to Empirex.

33. Cryptox Hub LLC ("Cryptox Hub") a company in the State of Florida, incorporated on or about April 5, 2021, with its listed address located in Miami, Florida. Cryptox Hub operated separately from Empirex and NKC Management and purported to be an investment platform and touted its various investment programs, including cryptocurrency.

34. Grajales LLC was a company in the State of Florida, incorporated on or about February 16, 2018, with its listed address located in Miami Lakes, Florida.

35. Intellect Management LLC ("Intellect Management") was a company in the State of Florida, incorporated on or about April 2, 2020, with its listed address located in Miami Beach, Florida.

36. Illuminat Consulting LLC ("Illuminat Consulting") was a company in the State of Florida, incorporated on or about April 5, 2021, with its listed addresses located in Miami, Florida, and Ft. Lauderdale, Florida.

37. AKC Management LLC ("AKC Management") was a company in the State of Florida, incorporated on or about April 15, 2021, with its listed address located in Miami, Florida.

38. Acer Media Services LLC ("Acer Media") was a company in the State of Florida, incorporated on or about May 17, 2021, with its listed address located in Miami, Florida.

39. JXVM Consulting LLC ("JXVM Consulting") was a company in the State of Florida, incorporated on or about November 23, 2021, with its listed address located in Miami, Florida.

40. JH Brickell Management LLC ("JH Brickell Management") was a company in the State of Florida, incorporated on or about November 23, 2021, with its listed address located in Miami, Florida.

41. Zeus X1 LLC ("Zeus X1") was a company in the State of Florida, incorporated on or about December 7, 2021, with its listed address located in Miami, Florida.

42. Anivia Consulting LLC ("Anivia Consulting") was a company in the State of Florida, incorporated on or about March 28, 2022, with its listed address located in Miami, Florida.

43. JQV Logistics LLC ("JQV Logistics") was a company in the State of Florida, incorporated on or about April 7, 2022, with its listed address located in Fort Lauderdale, Florida.

### Relevant Individuals

44. **RAFAEL ALBERTO VARGAS GONZALEZ, a/k/a "Rafa,"** was an individual who resided in Miami-Dade County, Florida. **RAFAEL VARGAS** was the chief

8

executive officer and the listed manager, managing member, organizer, and registered agent of Empirex, NKC Management, and Cryptox Hub. **RAFAEL VARGAS** utilized these companies, and others, to operate a Ponzi scheme. **RAFAEL VARGAS** was the sole signatory on Empirex's cryptocurrency wallet with Kraken and sole owner and operator of a cryptocurrency wallet with Binance. **RAFAEL VARGAS** was the sole owner and signatory of personal bank accounts at BoA, Capital One, Citibank, Citizens, and Regions. **RAFAEL VARGAS** was the sole signatory of Empirex bank accounts at Amerant, BoA, Citibank, Coast Community/Bluevine, Cross River, Evolve, JPMC, Santander, TD Bank, Truist, and Wells Fargo, and NKC Management bank accounts at Coast Community/Bluevine, Citizens, and Regions. **RAFAEL VARGAS** also operated as a money broker and money courier.

45.    **JUAN CARLOS MINERO ALONSO** resided in Mexico and elsewhere. **MINERO** was the owner and user of a cryptocurrency wallet with Binance and operated as a money broker for the Clan Del Golfo in Colombia.

46.    **CATHERINE GIOVANNA ROJAS ESCOBAR** resided in Miami-Dade County, Florida. **ROJAS** was the Executive Director at Empirex and operated as a money broker and money courier. In addition to working at Empirex's offices in the Southern District of Florida, **ROJAS** operated Empirex's offices in Medellin, Colombia, and Cali, Colombia, and was the sole owner and signatory of a bank account used for Empirex business at Bancolombia. **ROJAS** was also the listed manager and registered agent of Intellect Management and sole signatory of Intellect Management bank accounts at BoA and JPMC used by various money couriers throughout the United States.

47. **ROMAN DAVID ACERO QUINTERO** resided in Miami-Dade County, Florida. **ACERO** was the Executive Manager at Empirex's offices in the Southern District of Florida and operated as a money broker and money courier. **ACERO** was the listed manager and registered agent of Acer Media and sole signatory of Acer Media bank accounts at BoA and Wells Fargo used by various other money couriers throughout the United States.

48. **LUIS FELIPE AGUDELO** resided in Miami-Dade County, Florida, and Colombia. **AGUDELO** was employed at Empirex's offices in the Southern District of Florida and operated as a money courier.

49. **SAMUEL IGNACIO REYES BELLO** resided in Miami-Dade County, Florida. **SAMUEL REYES** operated as a money broker and money courier and was the listed company ambassador of Zeus X1 and sole signatory of Zeus X1 bank accounts at BoA, Citibank, JPMC, and Wells Fargo used by various money couriers throughout the United States.

50. **JAVIER ANDRES QUINTERO DE VEGA** resided in Miami-Dade County, Florida. **QUINTERO** was the listed member, manager, and registered agent of Illuminat Consulting and JQV Logistics and operated as a money broker and money courier. **QUINTERO** was also sole signatory of Illuminat Consulting and JQV Logistics bank accounts at BoA, Truist, and Wells Fargo used by various other money couriers throughout the United States.

51. **PAOLA ANDREA VARGAS GONZALEZ** resided in Miami-Dade County, Florida, and Texas. **PAOLA VARGAS** operated as a money broker and money courier and was sister of **RAFAEL ALBERTO VARGAS GONZALEZ. PAOLA VARGAS** was the listed manager and registered agent of AKC Management and sole signatory of AKC Management

bank accounts at BoA and Wells Fargo used by various other money couriers throughout the United States.

52. **EDUARDO JOSE VALENCIA MAZUERA** resided in Miami-Dade County, Florida, and Texas. **EDUARDO VALENCIA** was the listed manager and registered agent of JH Brickell Management and operated as a money broker. **EDUARDO VALENCIA** was also sole signatory of a JH Brickell Management bank account at JPMC used by various money couriers throughout the United States.

53. **JUAN JOSE VALENCIA VARGAS** resided in Miami-Dade County, Florida, and Texas. **JUAN VALENCIA** was the listed manager and registered agent of JXVM Consulting and operated as a money broker and money courier. **JUAN VALENCIA** was also the sole signatory of JXVM Consulting bank accounts at JPMC and Wells Fargo used by various other money couriers throughout the United States.

54. **JUAN SEBASTIAN REYES BELLO** resided in Miami-Dade County, Florida. **JUAN REYES** was the listed manager and registered agent of Anivia Consulting and operated as a money broker. **JUAN REYES** was also the sole signatory of Anivia Consulting bank accounts at BoA and JPMC used by various money couriers throughout the United States.

55. **JESUS GUILLERMO LUJAN VERDUZCO** resided in Mexico and elsewhere. **LUJAN** operated as a money courier.

56. **ADALBERTO VILLAESCUSA CARRILLO** resided in Mexico and elsewhere. **VILLAESCUSA** operated as a money courier.

57. **LUIS FERNANDO GAXIOLA LOUSTAUNA** resided in Mexico and elsewhere. **GAXIOLA** operated as a money courier.

11

58.    **LILIANA GUADALUPE CASTRO HACES** resided in Mexico and elsewhere. **CASTRO** operated as a money courier.

59.    **JORGE LUIS MEDINA MEDINA** resided in Mexico and elsewhere. **MEDINA** operated as a money courier.

60.    **CARLOS FELIPE PADILLA EZQUERRO, a/k/a "Irishman,"** resided in Mexico and elsewhere. **PADILLA** operated as a money courier.

61.    **MICHELLE ALEJANDRA BUSTAMANTE BELTRAN, a/k/a "Leo,"** resided in Mexico and elsewhere. **BUSTAMANTE** operated as a money courier.

62.    **OMAR ALEJANDRO FAVELA VALENZUELA, a/k/a "AX,"** resided in Mexico and elsewhere. **FAVELA** operated as a money courier.

63.    Monica Pilar Grajales Diaz, a/k/a "Monica Grajales," resided in Miami-Dade County, Florida. Monica Grajales was the "Executive Assistant" at Empirex's offices in the Southern District of Florida. Monica Grajales was the listed manager and registered agent of Grajales LLC and co-signatory of a Grajales LLC bank account at JPMC used by various money couriers throughout the United States.

## COUNTS 1-6
### Wire Fraud
### (18 U.S.C. § 1343)

1.    Paragraphs 1-63 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.    Beginning in or around December 2017, the exact date being unknown to the Grand Jury, and continuing through on or about the return of the Indictment, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAFAEL ALBERTO VARGAS GONZALEZ,**
**a/k/a "Rafa," and**
**CATHERINE GIOVANNA ROJAS ESCOBAR,**

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made and, for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) operating a Ponzi Scheme; (b) creating and distributing, by wire and other means, false and fraudulent investment agreements, contracts, statements, and other documents in relation to purportedly legitimate investment opportunities in stocks, bonds, and cryptocurrency thereby inducing investors to send funds by wire and other means to the defendants; (c) causing investors to invest more money than they would have invested by falsely and fraudulently promising high interest returns and profits; (d) providing, and causing to be provided, false and fraudulent information to investors and concealing that the investment opportunities were not profitable to the extent of the promised returns, did not exist, and that investors received, and would receive, payments from moneys deposited by other investors and other unlawful sources; (e) funneling new investor and other unlawful funds to previous investors, under the guise of legitimate profits and returns, thereby

inducing further investment and discouraging investor withdrawals; and (f) diverting investor proceeds for the defendants' and their accomplices own use and benefit, all to further the fraud scheme.

## THE SCHEME AND ARTIFICE

The manner and means by which the defendants sought to accomplish the purposes of the scheme and artifice, included, among others, the following:

### Empirex Ponzi Scheme

4.      Beginning no later than in or around December 2017, **RAFAEL ALBERTO VARGAS GONZALEZ, CATHERINE GIOVANNA ROJAS ESCOBAR,** and others created, and caused to be created, false and fraudulent Empirex marketing materials to provide, via email and other means of interstate wire communication, to Ponzi investors and prospective investors, including through a website accessible worldwide to the public at www.empirexcapital.com. Among other material misrepresentations, Empirex's marketing materials and website falsely and fraudulently offered investment opportunities as follows: a "traditional portfolio," which purported to include stocks, bonds, and commodities; and a "crypto portfolio," which purported to include cryptocurrency assets. Empirex's marketing materials and website also falsely and fraudulently claimed that Empirex was established in 2012 as a private investment fund, operated in offices in New York, Miami, Dubai, and Hong Kong, and that their "exclusive team of Asset Management professionals thoroughly studie[d] the market trends to create personalized strategies and diversify your portfolio in the best Crypto-Assets." In fact, as **RAFAEL VARGAS** and **ROJAS** well knew, Empirex was not established in 2012, was not a private investment fund, and did not have offices in New York, Dubai, and Hong Kong, employ any investment professionals, and conduct any trading and investment activity.

14

5. **RAFAEL ALBERTO VARGAS GONZALEZ, CATHERINE GIOVANNA ROJAS ESCOBAR,** and others further caused Empirex to tout its various investment programs through social media, online videos, webinars, email, and in-person meetings. Empirex, through **RAFAEL VARGAS** and **ROJAS**, communicated with Ponzi investors and prospective investors through email and online platforms and applications such as Zoom, YouTube, Instagram, and LinkedIn, among others. **RAFAEL VARGAS** and **ROJAS**, via email and other means of interstate wire communication, also provided, and caused to be provided, "investment agreements" to Empirex Ponzi investors and prospective investors in relation to its materially false and fraudulent "traditional portfolio" and "crypto portfolio" investment opportunities. The Empirex "investment agreements" contained a picture of the Empire State Building and falsely and fraudulently: contained a New York, New York address; were offered in three-month, six-month, and one-year lengths; ensured investment liquidity; and guaranteed fixed 5% to 29% rates of return to be paid out monthly. In fact, as **RAFAEL VARGAS** and **ROJAS** well knew, Empirex did not operate a New York office, did not conduct any business in New York, and could not ensure investment liquidity and guarantee any fixed rate of return to Ponzi investors and prospective investors.

6. **RAFAEL ALBERTO VARGAS GONZALEZ** and **CATHERINE GIOVANNA ROJAS ESCOBAR** falsely and fraudulently concealed from Ponzi investors and prospective investors that Empirex's "traditional portfolio" and "crypto portfolio" investment opportunities did not exist, Empirex did not engage in any trading and investment activity, and that any money that investors and prospective investors would receive would be from moneys deposited by other investors and other unlawful sources, among other material

15

misrepresentations. **RAFAEL VARGAS** and **ROJAS** also created and distributed, and caused to be created and distributed, via email and other means of interstate wire communication, false and fraudulent monthly Empirex account statements to Ponzi investors. These monthly account statements falsely and fraudulently contained a New York address and purported to show an investor's investment amount and alleged gains and profits. In fact, as **RAFAEL VARGAS** and **ROJAS** well knew, Empirex did not create, utilize, and administer investor accounts, allow investors to access their Empirex investment funds, and view how Empirex actually utilized investor proceeds.   The Empirex monthly account statements were falsely and fraudulently created and distributed to induce continued investment, discourage withdrawals, and to further the fraud scheme.

7.        Beginning on or about July 2, 2018, and continuing through on or about April 12, 2022, **RAFAEL ALBERTO VARGAS GONZALEZ,** at branch locations in Miami, Florida, and elsewhere, and utilizing the internet, submitted, and caused to be submitted, bank account application and related information for Empirex accounts at the following financial institutions: Amerant (xxxx-3606); BoA (xxxx-0453); Citibank (xxxx-1636); Coast Community/Bluevine (xxxx-4401); Cross River (xxxx-4606); Evolve (xxxx-4477); JPMC (xxxx-3618); Santander (xxxx-8081); TD Bank (xxxx-7615); Truist (xxxx-2840); and Wells Fargo (xxxx-6149). Additionally, during in or around December 2018, **RAFAEL VARGAS** directed **CATHERINE GIOVANNA ROJAS ESCOBAR** to begin utilizing a Bancolombia account in Colombia for Empirex business. **RAFAEL VARGAS** and **ROJAS** opened and utilized these different accounts because various financial institutions routinely closed Empirex banking accounts, all of which **RAFAEL VARGAS** and **ROJAS** falsely and fraudulently concealed from Ponzi

16

investors and prospective investors in order to further the fraud scheme.

8.     From in or around December 2018, through in or around April 2024, based on the false and fraudulent pretenses, representations, and promises, approximately 450 different Ponzi investors provided approximately $16 million, via interstate wire transfers and cash, to **RAFAEL ALBERTO VARGAS GONZALEZ** and **CATHERINE GIOVANNA ROJAS ESCOBAR** through deposits into Empirex's accounts described above in paragraph 7, **RAFAEL VARGAS's** personal BoA xxxx-5785, Capital One xxxx-2538, and Citibank xxxxx-5714 accounts, and **ROJAS's** personal account at Bancolombia. **RAFAEL VARGAS** and **ROJAS** utilized the approximately $16 million in Empirex fraud proceeds for their own use and benefit, to make lulling payments to Ponzi investors, and further the fraud scheme.

### NKC Management Ponzi Scheme

9.     Beginning no later than in or around September 2020, and continuing through in or around July 2022, numerous U.S.-based financial institutions closed Empirex's bank accounts. Beginning in or around February 2022, **RAFAEL ALBERTO VARGAS GONZALEZ** stopped making rent payments for Empirex's office space in Coral Gables, Florida, weekly salary payments to Empirex employees, and lulling payments to Empirex Ponzi investors. During this same time and earlier, **RAFAEL VARGAS** and **CATHERINE GIOVANNA ROJAS ESCOBAR** via email, text messages, and other means of interstate wire communication, also made multiple misrepresentations to existing Empirex Ponzi investors regarding the existence and status of their investments and payment of their expected profits and rates of return.

10.     Beginning on or about May 19, 2022, and continuing through July 28, 2023, **RAFAEL ALBERTO VARGAS GONZALEZ**, at branch locations in Miami, Florida, and

17

utilizing the internet, submitted, and caused to be submitted, bank account application and related information for multiple NKC Management accounts at the following financial institutions: Citizens account (xxxx-3306); Coast Community/Bluevine (xxxx-8416); and Regions (xxxx-8012 and xxxx-8020). During in or around this same time, **RAFAEL VARGAS**, falsely and fraudulently utilizing the same material misrepresentations described above in paragraphs 4-8 of the Scheme and Artifice, began soliciting, often via in-person meetings, new Ponzi investors utilizing NKC Management.

11.    **RAFAEL ALBERTO VARGAS GONZALEZ**, via email and other means of interstate wire communication, provided, and caused to be provided, NKC Management "investment agreements" to these new Ponzi investors and prospective investors in relation to its materially false and fraudulent "traditional portfolio" and "crypto portfolio" investment opportunities. The NKC Management "investment agreements," purportedly made "on behalf of Empirex Capital LLC," listed a Coral Gables, Florida, address and were offered in three-month, six-month, and one-year lengths, and falsely and fraudulently guaranteed investment liquidity and fixed 5% to 29% rates of return to be paid out monthly. In fact, as **RAFAEL VARGAS** well knew, NKC Management could not guarantee investment liquidity or guarantee any fixed rate of return.

12.    **RAFAEL ALBERTO VARGAS GONZALEZ** falsely and fraudulently concealed from NKC Management Ponzi investors and prospective investors that his "traditional portfolio" and "crypto portfolio" investment opportunities did not exist, NKC Management did not engage in any trading or investment activity, and that any money that NKC Management investors and prospective investors would receive would be from moneys deposited by other

18

investors and other unlawful sources, among other misrepresentations.

13.     **RAFAEL ALBERTO VARGAS GONZALEZ** also created and distributed, and caused to be created and distributed, via email and other means of interstate wire communication, false and fraudulent monthly account statements to NKC Management Ponzi investors. The monthly account statements purported to show an investor's investment amount and alleged gains and profits. In fact, as **RAFAEL VARGAS** well knew, NKC Management did not create, utilize, or administer investor accounts, did not allow investors to access or utilize their investment funds or view how **RAFAEL VARGAS** and NKC Management actually utilized investor proceeds. The monthly account statements were falsely and fraudulently created and distributed to induce continued investment, discourage withdrawals, and to further the fraud scheme.

14.     From in or around May 2022, through in or around December 2023, based on the false and fraudulent pretenses, representations, and promises, the NKC Management Ponzi investors provided approximately $1.2 million, via interstate wire transfers, to **RAFAEL ALBERTO VARGAS GONZALEZ** through deposits into NKC Management's accounts described above in paragraph 44 of the General Allegations and his personal Regions xxxx-4670 account.   **RAFAEL VARGAS** falsely and fraudulently utilized these funds from NKC Management Ponzi investors for his own use and benefit, and to further the fraud scheme.

### Cryptox Hub Ponzi Scheme

15.     On or about December 8, 2023, in case number 23-CV-23627-BLOOM, U.S. District Judge Beth Bloom, Southern District of Florida, ordered that **RAFAEL ALBERTO VARGAS GONZALEZ** was permanently restrained and enjoined from the following: violating

the Sections 5(a), 5(c), and 10(b) of the Securities Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933; and acting as an investment adviser under Sections 206(1) and (2) of the Investment Advisers Act of 1940. Despite Judge Bloom's order, beginning no later than in or around January 2024, **RAFAEL VARGAS** falsely and fraudulently utilized the same material misrepresentations described above in paragraphs 4-8 of the Scheme and Artifice, to begin soliciting, often via in-person meetings, new Ponzi investors utilizing Cryptox Hub.

16.    **RAFAEL ALBERTO VARGAS GONZALEZ**, via text messages and other means of interstate wire communication, provided, and caused to be provided, Cyptox Hub "short term investment agreements" to these new Ponzi investors and prospective investors in relation to materially false and fraudulent cryptocurrency investment opportunities. The Cyptox Hub "short term investment agreements" provided for terms on a weekly basis and falsely and fraudulently guaranteed investment liquidity and a fixed 21% rate of return to be paid out within three (3) days of expiration of the contract. In fact, as **RAFAEL ALBERTO VARGAS GONZALEZ** well knew, Cyptox Hub could not ensure investment liquidity or guarantee any fixed rate of return. **RAFAEL VARGAS** falsely and fraudulently concealed from Cyptox Hub Ponzi investors and prospective investors: i) Judge Bloom's order set forth above in paragraph 15 that permanently restrained and enjoined **RAFAEL VARGAS** from violating the Sections 5(a), 5(c), and 10(b) of the Securities Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933, and acting as an investment adviser under Sections 206(1) and (2) of the Investment Advisers Act of 1940; ii) that his cryptocurrency investment opportunities did not exist; iii) that Cyptox Hub did not engage in any trading or investment activity; and (iv) that any money that Cyptox Hub investors and prospective investors would receive would be from moneys deposited

by other investors and other unlawful sources, among other misrepresentations.

17.    Beginning in or around February 2024, and continuing through the return of this Indictment, based on the false and fraudulent pretenses, representations, and promises, Cyptox Hub Ponzi investors provided at least approximately $19,000 via interstate wire transfers to **RAFAEL ALBERTO VARGAS GONZALEZ. RAFAEL VARGAS** falsely and fraudulently utilized the funds from the Cyptox Hub Ponzi investors for his own use and benefit, and to further the fraud scheme.

## USE OF THE WIRES

18.    On or about the dates specified as to each count and defendant below, the defendants, **RAFAEL ALBERTO VARGAS GONZALEZ** and **CATHERINE GIOVANNA ROJAS ESCOBAR,** for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted, by means of wire communication, in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | APPROX. DATE | DEFENDANT | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 1 | 11/23/2020 | **RAFAEL VARGAS** and **ROJAS** | Email from "profits@empirexcapital.com" in the Southern District of Florida to an Empirex Ponzi investor in Colombia in relation to Empirex's failure to timely pay the investor's expected profits and returns. |

| COUNT | APPROX. DATE | DEFENDANT | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 2 | 6/7/2021 | **RAFAEL VARGAS** and **ROJAS** | Electronic submission of wire transfer in the amount of approximately $12,000 from an Empirex Ponzi investor's JPMC account, in New York, to Empirex's Wells Fargo xxxx-6149 account in the Southern District of Florida. |
| 3 | 8/4/2022 | **RAFAEL VARGAS** and **ROJAS** | Email from **ROJAS** in the Southern District of Florida to an Empirex Ponzi investor in Colombia in relation to Empirex's failure to timely pay the investor's expected profits and returns. |
| 4 | 7/14/2023 | **RAFAEL VARGAS** | Electronic submission of wire transfer in the amount of approximately $350,000 from an NKC Management Ponzi investor's Citibank account in the Southern District of Florida to NKC Management's Coastal Community xxxx-8416 account in Washington State. |
| 5 | 4/1/2024 | **RAFAEL VARGAS** | Electronic submission of a wire transfer, via Zelle, in the amount of approximately $3,000 from a Cryptox Hub Ponzi investor's BoA account in Virginia, to **RAFAEL VARGAS's** Citizens xxxx-8160 account in the Southern District of Florida. |
| 6 | 4/4/2024 | **RAFAEL VARGAS** | Electronic submission of a wire transfer, via Zelle, in the amount of approximately $3,500 from a Cryptox Hub Ponzi investor's BoA account in Virginia, to **RAFAEL VARGAS's** Citizens xxxx-8160 account in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1343 and 2.

22

## COUNT 7
## CONSPIRACY TO ENGAGE IN MONEY LAUNDERING
### (18 U.S.C. § 1956(h))

1.     The General Allegations section and paragraphs 4-17 of the Scheme and Artifice

of Counts 1-6 of this Indictment are re-alleged and incorporated by reference as though fully set

forth herein.

2.     Beginning in or around January 2019, and continuing through on or about

November 15, 2022, in Miami-Dade and Broward Counties, in the Southern District of Florida,

and elsewhere, the defendants,

**RAFAEL ALBERTO VARGAS GONZALEZ,**
**a/k/a "Rafa,"**
**JUAN CARLOS MINERO ALONSO,**
**CATHERINE GIOVANA ROJAS ESCOBAR,**
**ROMAN DAVID ACERO QUINTERO,**
**LUIS FELIPE AGUDELO,**
**SAMUEL IGNACIO REYES BELLO,**
**JAVIER ANDRES QUINTERO DE VEGA,**
**PAOLA ANDREA VARGAS GONZALEZ,**
**EDUARDO JOSE VALENCIA MAZUERA,**
**JUAN JOSE VALENCIA VARGAS,**
**JUAN SEBASTIAN REYES BELLO,**
**JESUS GUILLERMO LUJAN VERDUZCO,**
**ADALBERTO VILLAESCUSA CARRILLO,**
**LUIS FERNANDO GAXIOLA LOUSTAUNA,**
**LILIANA GUADALUPE CASTRO HACES,**
**JORGE LUIS MEDINA MEDINA,**
**CARLOS FELIPE PADILLA EZQUERRO,**
**a/k/a "Irishman,"**
**MICHELLE ALEJANDRA BUSTAMANTE BELTRAN,**
**a/k/a "Leo," and**
**OMAR ALEJANDRO FAVELA VALENZUELA,**
**a/k/a "AX,"**

23

did knowingly and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, in violation of Title 18, United States Code, Section 1956, that is:

(a)    to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b)    to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

It is further alleged that the specified unlawful activity is: wire fraud, in violation of Title 18, United States Code, Section 1343; and the felonious manufacture, importation, selling, distributing, and otherwise dealing in a controlled substance, punishable under the laws of the United States, in violation of Title 21, United States Code, Sections 963, 952, 846, and 841, as provided by Title 18, United States Code, Section 1956(c)(7)(A).

24

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 8-20
## MONEY LAUNDERING
## (18 U.S.C. § 1957)

1.     The General Allegations section and paragraphs 4-17 of the Scheme and Artifice of Counts 1-6 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates enumerated below as to each count, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAFAEL ALBERTO VARGAS GONZALEZ,**
**a/k/a "Rafa,"**
**SAMUEL IGNACIO REYES BELLO,**
**JAVIER ANDRES QUINTERO DE VEGA, and**
**PAOLA ANDREA VARGAS GONZALEZ,**

did knowingly engage and attempt to engage in the following monetary transactions by, though, and to a financial institution, affecting interstate and foreign commerce, involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as more specifically described below:

| COUNT | APPROX. DATE | DEFENDANT | MONETARY TRANSACTION |
|---|---|---|---|
| 8 | 9/18/2020 | **RAFAEL VARGAS** | Payment in the approximate amount of $20,000, via wire transfer from Empirex's JPMC xxxx-3618 account, to Nagi Investments LLC in connection with **RAFAEL VARGAS's** purchase of 1451 Brickell Ave, Unit 4203, Miami, FL. |

25

| COUNT | APPROX. DATE | DEFENDANT | MONETARY TRANSACTION |
|---|---|---|---|
| 9 | 6/28/2021 | **RAFAEL VARGAS** | Payment in the approximate amount of $45,697, via wire transfer from Empirex's Wells Fargo xxxx-6149 account, to Nagi Investments LLC in connection with **RAFAEL VARGAS's** purchase of 1451 Brickell Ave, Unit 4203, Miami, FL. |
| 10 | 8/1/2021 | **RAFAEL VARGAS** | Payment in the approximate amount of $13,054, via debit card purchase from Empirex's Wells Fargo xxxx-6149 account, to Bulargi Corporation of America for the purchase of two (2) gold rings. |
| 11 | 8/18/2021 | **RAFAEL VARGAS** | Payment in the approximate amount of $14,254, via debit card purchase from Empirex's Wells Fargo xxxx-6149 account, to Bulargi Corporation of America for the purchase of a Serpenti Tubogas watch. |
| 12 | 12/31/2021 | **RAFAEL VARGAS** | Payment in the approximate amount of $15,738, via debit card purchase from **RAFAEL VARGAS's** Capital One xxxx-2538 account, to Bulargi Corporation of America for the purchase of two (2) gold rings and a pair of diamond earrings. |
| 13 | 2/4/2022 | **RAFAEL VARGAS** | Payment in the approximate amount of $111,000, via wire transfer from **RAFAEL VARGAS's** Capital One xxxx-2538 account, to Braman Motors Inc. for the purchase of a 2019 Lamborghini Urus vehicle. |
| 14 | 2/15/2022 | **RAFAEL VARGAS** | Payment in the approximate amount of $115,000, via wire transfer from **RAFAEL VARGAS's** Capital One xxxx-2538 account, to Braman Motors Inc. for the purchase of a 2022 BMW M8 vehicle. |

| COUNT | APPROX. DATE | DEFENDANT | MONETARY TRANSACTION |
|---|---|---|---|
| 15 | 3/21/2022 | **RAFAEL VARGAS** | Payment in the approximate amount of $197,239, via wire transfer from **RAFAEL VARGAS's** Capital One xxxx-2538 account, to True Lease Funding LLC for the purchase of a 2020 Ferrari F8 vehicle. |
| 16 | 3/24/2022 | **SAMUEL REYES** | Payment, in the approximate amount of $125,485.14 via wire transfer from Zeus X1's BoA xxxx-2698 account, to True Lease Funding LLC, for the purchase of a 2019 Ferrari Portofino vehicle. |
| 17 | 3/29/2022 | **PAOLA VARGAS** | Payment, in the approximate amount of $47,396.76, via wire transfer from AKC Management's Wells Fargo xxxx-3200 account, to True Lease Funding LLC for the purchase of a 2022 Mercedes-Benz GLE 53 Class AMG vehicle. |
| 18 | 4/1/2022 | **RAFAEL VARGAS** | Payment in the approximate amount of $27,915, via a wire transfer from RAFAEL VARGAS's Capital One xxxx-2538 account, to Robinson's Jewelers for the purchase of a necklace. |
| 19 | 4/5/2022 | **RAFAEL VARGAS** | Payment in the approximate amount of $33,705, via a wire transfer from RAFAEL VARGAS's Capital One xxxx-2538 account, to Robinson's Jewelers for the purchase of a Rolex watch. |
| 20 | 6/9/2022 | **QUINTERO** | Payment, in the approximate amount of $54,570, via wire transfer from Illuminat Consulting's BoA xxxx-3930 account, to Robinson's Jewelers for the purchase of jewelry items. |

It is further alleged that the specified unlawful activity is: wire fraud, in violation of Title 18, United States Code, Section 1343; and the felonious manufacture, importation, selling,

distributing, and otherwise dealing in a controlled substance, punishable under the laws of the United States, in violation of Title 21, United States Code, Sections 963, 952, 846, and 841, as provided by Title 18, United States Code, Section 1956(c)(7)(A).

In violation of Title 18, United States Code, Sections 1957 and 2.

<u>COUNTS 21-30</u>
**OPERATION OF UNLICENSED MONEY TRANSMITTING BUSINESS**
**(18 U.S.C. § 1960(a))**

1. The General Allegations section and paragraphs 4-17 of the Scheme and Artifice of Counts 1-6 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated below as to each count, in Miami-Dade and Broward Count, in the Southern District of Florida, and elsewhere, the defendants,

**RAFAEL ALBERTO VARGAS GONZALEZ,**
**a/k/a "Rafa,"**
**CATHERINE GIOVANA ROJAS-ESCOBAR,**
**ROMAN DAVID ACERO QUINTERO,**
**SAMUEL IGNACIO REYES BELLO,**
**JAVIER ANDRES QUINTERO DE VEGA,**
**PAOLA ANDREA VARGAS GONZALEZ,**
**EDUARDO JOSE VALENCIA MAZUERA,**
**JUAN JOSE VALENCIA VARGAS, and**
**JUAN SEBASTIAN REYES BELLO,**

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, which:

(a)    operated without an appropriate money transmitting license in the State of Florida where such operation is punishable as a felony under state law;

(b)    failed to comply with the money transmitting business registration regulations

28

under Section 5330 of Title 31, United States Code, and regulations prescribed thereunder; and

(c)     involved the transportation and transmission of funds that were known to the defendant to have been derived from a criminal offense and intended to be used to promote or support unlawful activity.

| COUNT | APPROX. DATES | DEFENDANT | UNLICENSED MONEY TRANSMITTING BUSINESS |
|---|---|---|---|
| 21 | 1/23/2019 - 5/11/2022 | **RAFAEL VARGAS** | Empirex |
| 22 | 11/1/2021 – 6/29/2022 | **JAVIER QUINTERO** | Illuminat Consulting |
| 23 | 11/23/2021 – 4/25/2022 | **PAOLA VARGAS** | AKC Management |
| 24 | 12/2/2021 - 4/6/2022 | **JUAN VALENCIA** | JXVM Consulting |
| 25 | 12/2/2021 – 4/12/2022 | **EDUARDO VALENCIA** | JH Brickell Management |
| 26 | 12/16/2021 – 8/12/2022 | **DAVID ACERO** | Acer Media |
| 27 | 12/17/2021 – 8/19/2022 | **ROJAS** | Intellect Management |
| 28 | 1/10/2022 – 4/12/2022 | **SAMUEL REYES** | Zeus X1 |
| 29 | 4/11/2022 – 6/2/2022 | **JUAN REYES** | Anivia Consulting |
| 30 | 5/5/2022 – 6/28/2022 | **JAVIER QUINTERO** | JQV Logistics |

In violation of Title 18, United States Code, Sections 1960(a) and 2.

**FORFEITURE**

1.     The allegations of this Indictment are re-alleged and by this reference fully

29

incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **RAFAEL ALBERTO VARGAS GONZALEZ, a/k/a "Rafa," JUAN CARLOS MINERO ALONSO, CATHERINE GIOVANA ROJAS ESCOBAR, ROMAN DAVID ACERO QUINTERO, LUIS FELIPE AGUDELO, SAMUEL IGNACIO REYES BELLO, JAVIER ANDRES QUINTERO DE VEGA, PAOLA ANDREA VARGAS GONZALEZ, EDUARDO JOSE VALENCIA MAZUERA, JUAN JOSE VALENCIA VARGAS, JUAN SEBASTIAN REYES BELLO, JESUS GUILLERMO LUJAN VERDUZCO, ADALBERTO VILLAESCUSA CARRILLO, LUIS FERNANDO GAXIOLA LOUSTAUNA, LILIANA GUADALUPE CASTRO HACES, JORGE LUIS MEDINA MEDINA, CARLOS FELIPE PADILLA EZQUERRO, a/k/a "Irishman," MICHELLE ALEJANDRA BUSTAMANTE BELTRAN, a/k/a "Leo," and OMAR ALEJANDRO FAVELA VALENZUELA, a/k/a "AX,"** have an interest.

2.      Upon conviction of any violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendants, **RAFAEL ALBERTO VARGAS GONZALEZ, a/k/a "Rafa," and CATHERINE GIOVANA ROJAS ESCOBAR,** shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C)

3.      Upon conviction of any violation of Title 18, United States Code, Sections 1956, 1957, or 1960, as alleged in this Indictment, the defendants, **RAFAEL ALBERTO VARGAS GONZALEZ, a/k/a "Rafa," JUAN CARLOS MINERO ALONSO, CATHERINE GIOVANA ROJAS ESCOBAR, ROMAN DAVID ACERO QUINTERO, LUIS FELIPE AGUDELO, SAMUEL IGNACIO REYES BELLO, JAVIER ANDRES QUINTERO DE**

VEGA, PAOLA ANDREA VARGAS GONZALEZ, EDUARDO JOSE VALENCIA MAZUERA, JUAN JOSE VALENCIA VARGAS, JUAN SEBASTIAN REYES BELLO, JESUS GUILLERMO LUJAN VERDUZCO, ADALBERTO VILLAESCUSA CARRILLO, LUIS FERNANDO GAXIOLA LOUSTAUNA, LILIANA GUADALUPE CASTRO HACES, JORGE LUIS MEDINA MEDINA, CARLOS FELIPE PADILLA EZQUERRO, a/k/a "Irishman," MICHELLE ALEJANDRA BUSTAMANTE BELTRAN, a/k/a "Leo," and OMAR ALEJANDRO FAVELA VALENZUELA, a/k/a "AX," shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 2461(c).

A TRUE BILL

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

SEAN T. McLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY

KEVIN D. GERARDE
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

RAFAEL ALBERTO VARGAS
GONZALEZ,  a/k/a "Rafa," et al.,

_____/

Defendants.

**Court Division** (select one)

☑ Miami    ☐ Key West    ☐ FTP
☐ FTL      ☐ WPB

CASE NO.: __25-CR-20416-MARTINEZ/SANCHEZ__

### CERTIFICATE OF TRIAL ATTORNEY

**Superseding Case Information:**

New Defendant(s) (Yes or No)_____

Number of New Defendants _____

Total number of new counts _____

I do hereby certify that:

1.  I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) Yes
    List language and/or dialect: Spanish

4.  This case will take __20__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                 (Check only one)
    I   ☐ 0 to 5 days                 ☐ Petty
    II  ☐ 6 to 10 days                ☐ Minor
    III ☑ 11 to 20 days               ☐ Misdemeanor
    IV  ☐ 21 to 60 days               ☑ Felony
    V   ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No
    If yes, Judge _____ Case No. _____

7.  Has a complaint been filed in this matter? (Yes or No) No
    If yes, Judge _____ Magistrate Case No. _____

8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No
    If yes, Judge _____ Case No. _____

9.  Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Sean T. McLaughlin
Assistant United States Attorney
SDFL Court ID No.   A5501121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:   **RAFAEL ALBERTO VARGAS GONZALEZ, a/k/a "Rafa"**

Case No: _____

Counts #: 1-6

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $250,000.00**

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

Counts #: 8-15, 18 & 19

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment: 10 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine:   $250,000.00 (or double unlawful proceeds)**

Count #: 21

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: <u>JUAN CARLOS MINERO ALONSO</u>

Case No: _____

Count #: 7

<u>Conspiracy to Engage in Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

Defendant's Name:  __CATHERINE GIOVANA ROJAS-ESCOBAR__

Case No: _____

Counts #: 1-3

Wire Fraud _____

Title 18, United States Code, Section 1343 _____
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $250,000.00** _____

Count #: 7

Conspiracy to Engage in Money Laundering _____

Title 18, United States Code, Section 1956(h) _____
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $550,000.00 (or double unlawful proceeds)** _____

Count #: 27

Operation of Unlicensed Money Transmitting Business _____

Title 18, United States Code, Section 1960(a) _____
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00** _____

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:  ROMAN DAVID ACERO QUINTERO**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

Count #: 26

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **LUIS FELIPE AGUDELO**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** **SAMUEL IGNACIO REYES BELLO**

**Case No:** _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

Count #: 16

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment: 10 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine:   $250,000.00 (or double unlawful proceeds)**

Count #: 28

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

Defendant's Name:  **JAVIER ANDRES QUINTERO DE VEGA**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

Count #: 20

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment: 10 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine:   $250,000.00 (or double unlawful proceeds)**

Counts #: 22 & 30

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  **PAOLA ANDREA VARGAS GONZALEZ**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $550,000.00 (or double unlawful proceeds)**

Count #: 17

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment: 10 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable):  N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine:  $250,000.00 (or double unlawful proceeds)**

Count #: 23

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00**

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  **EDUARDO JOSE VALENCIA MAZUERA**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* Max. Term of Imprisonment: 20 Years' Imprisonment
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 5 years
* Max. Fine:  $550,000.00 (or double unlawful proceeds)

Count #: 25

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* Max. Term of Imprisonment: 5 Years' Imprisonment
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000.00

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:  JUAN JOSE VALENCIA VARGAS**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

Count #: 24

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  **JUAN SEBASTIAN REYES BELLO**

Case No:  **25-CR-20416-JEM**

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

Count #: 29

Operation of Unlicensed Money Transmitting Business

Title 18, United States Code, Section 1960(a)
* **Max. Term of Imprisonment: 5 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000.00**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  **JESUS GUILLERMO LUJAN VERDUZCO**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)

\* **Max. Term of Imprisonment: 20 Years' Imprisonment**

\* **Mandatory Min. Term of Imprisonment (if applicable): N/A**

\* **Max. Supervised Release: 5 years**

\* **Max. Fine:   $550,000.00 (or double unlawful proceeds)**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** <u>**ADALBERTO VILLAESCUSA CARRILLO**</u>

Case No: _____

Count #: 7

<u>Conspiracy to Engage in Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $550,000.00 (or double unlawful proceeds)**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:  LUIS FERNANDO GAXIOLA LOUSTAUNA**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)

**\* Max. Term of Imprisonment: 20 Years' Imprisonment**

**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**

**\* Max. Supervised Release: 5 years**

**\* Max. Fine:  $550,000.00 (or double unlawful proceeds)**

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:  LILIANA GUADALUPE CASTRO HACES**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)

* Max. Term of Imprisonment: 20 Years' Imprisonment
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 5 years
* Max. Fine:   $550,000.00 (or double unlawful proceeds)

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** <u>JORGE LUIS MEDINA MEDINA</u>

Case No: _____

Count #: 7

<u>Conspiracy to Engage in Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>

\* **Max. Term of Imprisonment: 20 Years' Imprisonment**

\* **Mandatory Min. Term of Imprisonment (if applicable): N/A**

\* **Max. Supervised Release: 5 years**

\* **Max. Fine:  $550,000.00 (or double unlawful proceeds)**

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: <u>CARLOS FELIPE PADILLA EZQUERRO, a/k/a "Irishman"</u>

Case No: _____

Count #: 7

<u>Conspiracy to Engage in Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>
* Max. Term of Imprisonment: 20 Years' Imprisonment
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 5 years
* Max. Fine:   $550,000.00 (or double unlawful proceeds)

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **MICHELLE ALEJANDRA BUSTAMANTE BELTRAN, a/k/a "Leo"**

Case No: _____

Count #: 7

Conspiracy to Engage in Money Laundering

Title 18, United States Code, Section 1956(h)
* Max. Term of Imprisonment: 20 Years' Imprisonment
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 5 years
* Max. Fine:   $550,000.00 (or double unlawful proceeds)

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: <u>OMAR ALEJANDRO FAVELA VALENZUELA, a/k/a "AX"</u>**

Case No: _____

Count #: 7

<u>Conspiracy to Engage in Money Laundering</u>

<u>Title 18, United States Code, Section 1956(h)</u>
* **Max. Term of Imprisonment: 20 Years' Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 5 years**
* **Max. Fine:  $550,000.00 (or double unlawful proceeds)**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# EXHIBIT B

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
RAFAEL ALBERTO VARGAS GONZALEZ,
a/k/a "Rafa," et al.,

_____
Defendants.

)
)
)
)
)
)

Case No. **25-CR-20416-MARTINEZ/SANCHEZ**

FILED BY_____**BM**_____D.C.

*Sep 18, 2025*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    CARLOS FELIPE PADILLA EZQUERRO, a/k/a "Irishman"_____ .
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:
Conspiracy to Engage in Money Laundering, in violation of Title 18 U.S.C. §1956(h).

Certified to be a true and
correct copy of the document on file
Angela E. Noble, Clerk,
U.S. District Court
Southern District of Florida
By____*BryanMartinez*____
Deputy Clerk
Date____**Sep 18, 2025**

Date: **9/18/25**_____

*BryanMartinez*
*Issuing officer's signature*

City and state:    Miami, Florida_____

Angela E. Noble, Clerk of Court / Court Administrator
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |
| _____ *Arresting officer's signature* |
| _____ *Printed name and title* |